[No. C001765. Third Dist. Dec. 21, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL ANTHONY RUPE, Defendant and Appellant.

[Opinion certified for partial publication.[1]]

---

[1] The Reporter of Decisions is ordered to publish all of this opinion except parts I through IX.

**COUNSEL**

Jaime Alcabes and Andrew Cappelli, under appointments by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and Shirley A. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**PUGLIA, P. J.**—Defendant appeals from the judgment following his conviction of first degree murder of his estranged wife, Natalie (Pen. Code, §§ 187, 189), and of second degree murder of Natalie's roommate, Deborah Robbins (Pen. Code, § 189; all further statutory references to sections of an undesignated code are to the Penal Code). The jury also found true a multiple murder special circumstance (§ 190.2, subd. (a)(3)). The People did not seek the death penalty and defendant was sentenced for the first degree murder to life without possibility of parole. In the published portion of this opinion, we shall reject defendant's contention the court erred in refusing certain proffered "pin point" instructions dealing with manslaughter. Since we reject the remainder of defendant's contentions in the unpublished portion of this opinion, we shall affirm.

I-IX*

·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·

X

Natalie and defendant were undergoing a rancorous divorce. They separated and Natalie and Robbins moved into a house together. Defendant manifested hostility toward Natalie and in the presence of others had voiced threats to kill her. Natalie and Robbins were in fear of defendant. On the morning of August 24, 1985, defendant forcibly entered the victims' home and stabbed them to death. Natalie suffered 17 stab wounds and Robbins 20.

Although defendant did not testify, he produced circumstantial evidence of alibi. He also called as a witness a police officer who testified that on July 7, 1985, about seven weeks before the killings, he received a report of a family disturbance at defendant's residence. When he arrived there he found defendant and Natalie in a struggle. Both had sustained minor scrapes and bumps.

In closing argument, counsel presented defendant as a person with "a mind clouded by passion and anger." Counsel noted the evidence of a volatile dissolution, with defendant's anger and rage "build[ing] up over . . . a long period of time." Counsel closed by urging the jury to return a verdict of voluntary manslaughter as a result of an "extremely emotional

---

* See footnote 1, *ante,* page 1537.

situation" and suggested it would be "a travesty of justice to return a verdict [greater] than second degree murder."

Defendant proffered 10 special defense instructions to the trial court, 3 of which—defendant's proposed instructions 1, 9, and 10—he now argues the court erred in refusing to give. Defendant's proposed instruction number 1 provided as follows: "The passion necessary to constitute heat of passion need not mean rage or anger but may be any violent, intense, overwrought or enthusiastic emotion which causes a person to act rashly and without deliberation and reflection."

Defendant's proposed instruction number 9 provided: "No specific type of provocation is required to generate the passion necessary to constitute heat of passion, and verbal provocation may be sufficient."

Defendant's proposed instruction number 10 provided: "A defendant may act in the heat of passion at the time of the killing as a result of a series of events which occur over a considerable period of time.

"Where the provocation extends for a long period of time, you must take such period of time into account in determining whether there was a sufficient cooling period for the passion to subside.

"The burden is upon the prosecution to establish beyond a reasonable doubt that the defendant did not act in the heat of passion."

The trial court refused the proposed instructions but gave the standard manslaughter instructions from CALJIC.[11]

■ Defendant argues proposed instruction number 1 was necessary because CALJIC No. 8.44, which defines the phrase "heat of passion," sets forth those emotions which cannot qualify as heat of passion, but does not describe specifically which emotions may constitute "heat of passion." Defendant argues that by negatively enumerating specific emotions, CALJIC

---

[11] Among the instructions which the court gave were:
(1) CALJIC No. 8.40.
"The crime of voluntary manslaughter is the unlawful killing of a human being without malice aforethought when there is an intent to kill.
"There is no malice aforethought if the killing occurred upon a sudden quarrel or heat of passion.
"In order to prove the commission of the crime of voluntary manslaughter, each of the following elements must be proved:
"First, that a human being was killed;
"Second, that the killing was unlawful; and
"Third, that the killing was done with the intent to kill."

No. 8.44 may have caused the jury to limit the basis for "heat of passion." We disagree.

First, far from limiting the concept, CALJIC 8.42 defines "heat of passion" expansively as "such a passion *as naturally would be aroused in the mind of an ordinarily reasonable person in the same circumstances.*" (Italics added.) Second, defendant's proposed instruction number 1 is simply legally incorrect, and egregiously so, in that it would give defendant refuge in his own sanguinary standard of conduct by allowing "*any* violent, intense, overwrought or enthusiastic emotion which causes a person to act rashly" (italics added) to mitigate his crime.[12] Third, defendant's proposed instruction number 1 specifically identifies only two emotions, rage and anger, and then in a context that invites the jury to disregard them and look elsewhere for some mitigating passion. However, as repeatedly emphasized in defendant's opening brief, his murderous rampage was animated by anger. Fourth, since CALJIC No. 8.44 instructs the jury as to what heat of passion is *not,* it

(2) CALJIC No. 8.42.

"To reduce an intentional felonious homicide from the offense of murder to manslaughter upon the ground of sudden quarrel or heat of passion, the provocation must be of such character and degree as naturally would excite and arouse such passion, and the assailant must act under the smart of that sudden quarrel or heat of passion.

"The heat of passion which will reduce a homicide to manslaughter must be such a passion as naturally would be aroused in the mind of an ordinarily reasonable person in the same circumstances. A defendant is not permitted to set up his own standard of conduct and to justify or excuse himself because his passions were aroused unless the circumstances in which he was placed and the facts that confronted him were such as also would have aroused the passion of the ordinarily reasonable man faced with the same situation. The question to be answered is whether or not, at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment.

"If there was provocation, but of a nature not normally sufficient to arouse passion, or if sufficient time elapsed between the provocation and the fatal blow for passion to subside and reason to return, and if an unlawful killing of a human being followed such provocation and had all the elements of murder, as I have defined it, the mere fact of slight or remote provocaton will not reduce the offense to manslaughter."

(3) CALJIC No. 8.44.

"Neither the emotion of fear, of itself, nor the emotion for revenge, of itself, nor the emotion induced by and accompanying or following an intent to commit a felony, of itself, nor any or all of these emotional states, in and of themselves, constitute the heat of passion referred to in the law of manslaughter which I have stated to you. Any or all of such specific emotions may be involved in a heat of passion that causes judgment to give way to impulse and rashness, but also any one or more of them may exist in the mind of a person who acts deliberately and from choice following his own reasoning howsoever good or bad it may be. Hence the law sets up the standard and requires the test that I previously have stated to you for determining whether or not the defendant acted under heat of passion."

[12] We do not agree with the dicta in *People* v. *Thompkins* (1987) 195 Cal.App.3d 244 [240 Cal.Rptr. 516], suggesting an instruction identical to defendant's proposed instruction number one constitutes an accurate statement of the law. (*Id.,* at pp. 256-257 and fn. 7.)

cannot fairly be read to "limit" the jury's understanding of what constitutes heat of passion.

■ Defendant asserts his proposed instructions 9 and 10 are "further definitions regarding heat of passion that [ ], in my opinion, are not expostulated in sufficient detail in the CALJIC instructions." Yet, the record is unclear whether defendant intended these proposed instructions to supplement or supplant the given CALJIC instructions, and defendant failed to place on the record his argument showing how the CALJIC instructions were deficient and why his proposed instructions would better serve the interests of justice.

Moreover, the statement in defendant's proposed instruction number 9 that "No specific type of provocation is required . . . ." adds nothing to and in fact is inconsistent with the instructions given. First, CALJIC 8.42 makes it unambiguously clear that *any* provocation is sufficient provided it is "of such character and degree as naturally would excite and arouse such [heat of] passion . . . ." Second, because defendant's proposed instruction number 9 is not expressly conditioned by the proviso quoted from CALJIC 8.42, it is at best misleading and at worst another mischievous attempt to smuggle into the fact-finding calculus defendant's own perverse standard of behavior. Finally, it is worthy of mention that the specific reference to "verbal provocation" in defendant's proposed instruction number 9, while legally accurate, is in the context of this case a mere abstraction since there is no evidence of provocative words by either victim.

Concerning defendant's proposed instruction number 10, the jury was fully, correctly and specifically instructed in terms of CALJIC No. 8.50 on the People's burden to negative heat of passion. Defendant argues however that CALJIC 8.42 does not convey to the jury as does his proposed instruction number 10 that heat of passion can be provoked over time by a series of events. Putting aside the fact that in CALJIC 8.42 time—brief or lengthy—is not a factor, we believe the defendant's fixation on time is simply misplaced. The only evidence involving either victim in arguably provocative acts concerned a physical altercation between Natalie and defendant on July 7, 1985, as to which it does not appear who provoked whom, and an occasion in early July 1985 when Natalie went to defendant's residence and reclaimed some possessions belonging to her and her children. The murder took place on August 24, 1985, well over a month later. Thus, the evidence shows not a protracted series of provocative acts but a relatively brief period in which the evidence tenuously suggests provocation may have occurred followed by a protracted period in which there was an opportunity for passion to subside. Testimony by defendant's witnesses that he was becoming increasingly angry and upset with Natalie and felt he should just "blow

[her] away" suggest the arousal of strong passions unrelated however to any mitigating provocations. Moreover, defendant's proposed instruction number 10 is argumentative in that it would inform the jury it "must" take into account the period of time over which the provocations extend in determining whether there was a sufficient cooling period for passion to subside. (Cf. CALJIC 8.42 which instructs the jury to determine "if sufficient time elapsed *between the provocation and the fatal blow* for passion to subside . . . ." [Italics added.])

The trial court did not err in refusing to give defendant's proposed instructions 1, 9 and 10.

The judgment is affirmed.

Sparks, J., and Deegan, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.